**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** **PLAINTIFF,** | **CASE #:** 01-80571 |
| vs. | **HON. MARK A. GOLDSMITH** |
| **MILTON BUTCH JONES** **DEFENDANT.** | |
| Stephen Hiyama, AUSA US Attorney's Office 211 W. Fort Street, Suite 2001 Detroit, MI 48226 (313) 226-9674 Email: stephen.hiyama@usdoj.gov | Harold Gurewitz (P14468) Gurewitz & Raben, PLC 333 W. Fort Street, Suite 1400 Detroit, MI 48226 (313) 628-4733 Email: hgurewitz@grplc.com |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF 861)**

Defendant Milton "Butch" Jones requests reconsideration of his motion for compassionate release (ECF 844) because this Court's Order denying that motion is based on "palpable defects," LR 7.1(h), which if corrected should result in an order granting his motion. He relies on his attached brief for support.

Pursuant to ED MI LR 7.1, concurrence was requested from opposing counsel but it was denied.

                                        Respectfully submitted,

                                        **GUREWITZ & RABEN, PLC**

By:   s/Harold Gurewitz
       333 W. Fort Street, Suite 1400
       Detroit, MI 48226
       (313) 628-4733
       Email: hgurewitz@grplc.com

Date: February 8, 2021       Attorney Bar Number: P14468

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>PLAINTIFF,<br><br>vs.<br><br>MILTON BUTCH JONES<br>      DEFENDANT. | CASE NO.01-80571<br><br>HON. MARK A. GOLDSMITH |
| Stephen Hiyama, AUSA<br>US Attorney's Office<br>211 W. Fort Street, Suite 2001<br>Detroit, MI 48226<br>(313) 226-9674<br>Email: stephen.hiyama@usdoj.gov | Harold Gurewitz (P14468)<br>Gurewitz & Raben, PLC<br>333 W. Fort Street, Suite 1400<br>Detroit, MI 48226<br>(313) 628-4733<br>Email: hgurewitz@grplc.com |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF 861)**

Defendant Milton "Butch" Jones asks this Court to reconsider and correct its Order denying his Motion for Compassionate Release. (ECF 861). He asks for reconsideration because this Court's Order is based upon "palpable defects," errors of fact and law which, if corrected, will result in a different disposition of his Motion. (ECF 844)  See, LR 7.1(h), ED MI. ("The movant must not only demonstrate a palpable defect by which the Court and other persons entitled to be heard on the motion have been misled, but also show that correcting the defect will result in a different disposition of the case.".

**I.    JONES' MULTIPLE RISK FACTORS FOR SEVERE INFECTION FROM COVID-19, EVEN AFTER INFECTION BY THE DISEASE IN DECEMBER, 2020, ARE EXTRAORDINARY AND COMPELLING REASONS TO GRANT HIS MOTION.**

**A.    Mr. Jones' Risk Factors Include Chronic Kidney Disease And Type II Diabetes Mellitus.**

Milton Jones filed his motion for Compassionate Release on December 10, 2020 (ECF 844) because his combination of multiple medical risk factors are extraordinary and compelling reasons to grant him compassionate release.

Mr. Jones is confined at FCMP Springfield where he has received dialysis three times a week since 2012 for End Stage Renal Disease. Mr. Jones could become eligible for a kidney transplant because of his disease if released from custody. *United States v. Jackson*, 2020 WL 1955404, S.D. Texas, 4/23/20. In *Jackson*, the court granted compassionate release from BOP custody at MCFP Springfield to a defendant, who like Mr. Jones, suffered from chronic kidney disease and was highly vulnerable to COVID-19 in custody. *Id*. at *4.

**B.    Mr. Jones' COVID-19 Risk Factors Are Documented By His Medical Records And Are Explained In A Declaration By Nephrologist Dr. Mark Faber  (Defendant's Sealed Exhibit H)**.

According to Dr. Faber, a Henry Ford Hospital nephrologist who reviewed Mr. Jones' FCMP Springfield medical records, Mr. Jones has the full gamut of CDC risk factors for serious complications from COVID-19:

> It appears from Mr. Jones' medical records that he has virtually all known risk factor[s] for serious complications including death should he contract SARS 2 COVID-19. These risks include advanced age (65 years), obesity (patient is 6' 1," 255 pounds, BMI 33.6), diabetes mellitus, African-American, hypertension and kidney failure.

(ECF 846: Sealed Exhibit H, Faber Declaration at ¶5).

Mr. Jones was diagnosed with COVID-19 on December 10, 2020, while his motion was pending with this Court. (ECF 859: Sealed Supplemental Submission Exhibit A, Declaration of Tara Vijayan, M.D., MPH, ¶5). Although initially asymptomatic, Mr. Jones was treated a week after the disease onset at a local community hospital from December 17, 2020 through December 22, 2020 for serious and active symptoms including moderate to severe pneumonia (up to 10L oxygen by nasal cannula). He was given medications, including steroids (dexamethasone), convalescent plasma and remdesivir. He was also given antibiotics (ceftriaxone, axithromycin and cefdinir) for presumed bacterial pneumonia. (Govt Exhibit 14, p 1). The records describe his condition on admission as follows:

> CURRENT STATUS: 12-17: Patient is a 65 year old male from fed med with past history of end-stage renal disease on dialysis Tuesday, Thursday and Saturday, hypertension hyper lipids, obstructive sleep apnea on CPAP, depression, vitamin deficiency, type 2 diabetes mellitus, brought into ED for chest pain, shortness of breath and hypoxia. Patient

> was apparently tested Covid +7 days ago. Today while having dialysis patient reported to have chest pain, worsening shortness of breath and was noted to be hypoxic there brought in to ED for further evaluation and treatment.

(R856: Sealed Exhibit L, Medical Records, p. 8).

The hospital's records show that his "principal problem[s]" at admission were quite serious: "acute respiratory failure with hypoxia, [i.e., low blood oxygen levels];" and that his "active problems" included: " diabetic polyneuropathy associated with type 2 diabetes mellitus, ESRD on dialysis, pneumonia due to COVID-19 virus, benign hypertension." (Id, p. 14). Mr. Jones was treated at the community hospital with convalescent plasma and remdesivir for four days, (Id, p. 9), and then discharged back to MCFP Springfield where he was kept in isolation through December 28. On January 9, 2021, his FCMP Springfield file records nausea, swelling and closing of his left eye, a condition not presented before his COVID-19 diagnosis.[1] (Id, p. 34).

As correctly noted by this Court's Opinion and Order, at Pg ID 6637, Mr. Jones' medical file notes that as of December 29, 2020, his December 10, 2020

---

[1] Eyesight issues are common with severe COVID infections. Mayo Clinic, "*Unusual Coronavirus (COVID-19) Symptoms: What Are They?* https://newsnetwork.mayoclinic.org/discussion/unusual-coronavirus-covid-19-symptoms-what-are-they/

COVID-19 diagnosis was in "remission."[2] (ECF 859-2, Exhibit B). It is the Defendant's position, however, as supported by the Declaration of Dr. Vajayan and advice of the CDC, that he remains at serious risk while incarcerated at FCMP Springfield where he is necessarily exposed to other inmates and dialysis patients who are likely carriers of COVID -19, and where he will continue to live in a custodial environment without social distancing and other now commonly espoused COVID-19 protective measures.

The factual reasons in the Opinion and Order are tied only to the medical records note of the disease in "remission." There is no reference to Dr. Vajayan's opinion on Mr. Jones' status.

**II.     THIS COURT SHOULD GRANT REHEARING BECAUSE ITS CONCLUSION, THAT THE RISK OF REINFECTION WITH COVID-19 FOR MILTON JONES IS "SPECULATIVE" AND THEREFORE " CANNOT SUPPORT A FINDING OF EXTRAORDINARY AND COMPELLING REASONS FOR COMPASSIONATE RELEASE," IS BASED ON ERRORS OF LAW AND FACT.**

**A.     The Standard for Finding a "Palpable Defect" on a Rehearing Is like That for Finding Abuse of Discretion on Appellate Review.**

In *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020), in describing the district court's obligation to explain its decision either granting or denying a

---

[2] A disease need not be cured to be in "remission" nor need the symptoms disappear. "Remission" simply means the diminution or abatement of disease symptoms. *Dorland's Illustrated Medical Dictionary*, at 1444 (28th ed. 1994).

motion for compassionate release, the Court opined that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Both occurred here.

In *Jones,* the Court also explained the district court's obligation to document reasons for granting or denying a compassionate release motion. *Id* at 1113.

> We require judges to write more extensively in §3582(c)(1)(A) decisions where the record bears little indication that the district judge considered all the defendant's evidence and arguments before granting or denying compassionate release. *Ruffin*, 978 F.3d at 1098-09 (citing *Chevez-Meza*, 138 S.Ct. at 1966-67) The obligation to explain is imperative when the original sentencing judge and the compassionate release decision judge are different persons, as the original sentencing transcript does not reflect the latter judge's factual reasons for their §3582(c)(1)(A) decision.

**B.    The Declaration of Dr. Tara Varjayan, an Infectious Disease Expert Who Reviewed Mr. Jones' Medical Records, and CDC Advice That The Risk Of Re-Infection Continues 90 Days After a Person's Initial Infection, Establish Errors That Support Grant of Mr. Jones' Motion.**

This Court's conclusion that because Mr. Jones' medical records include a note for December 29, 2020 that his COVID-19 was then in "remission." (ECF 861: Opinion and Order, Pg ID 6637), that his risk of reinfection is, therefore, only "speculative," (Id, Pg ID 6639), and "cannot support a finding of

-6-

extraordinary and compelling reasons for compassionate release," (Id) is contrary to scientific opinion and law.

Dr. Vajayan's Declaration provides a science-based opinion that supports rehearing. Her opinion refutes the conclusion from a single reference in Mr. Jones' medical records to "remission," that his risk of re-infection is too "speculative" to grant relief (ECF 861: Opinion and Order, Pg ID 6639). Dr. Vajayan opines that any COVID-19 immunity for Mr. Jones will last no longer than 90 days from his onset of the illness on December 10, 2020, " (ECF 859: Exhibit A, Declaration of Tara Viayan, M.D., MPH at ¶9, "It is my opinion that Mr. Jones remains at risk for re-infection after March 10, 2021, 90 days from his initial infection."). Dr. Vajayan is a physician, board certified in both infectious diseases and internal medicine, who has reviewed the same medical records for Mr. Jones submitted to this Court.

The CDC issued similar advice on COVID-19 reinfection. *Duration of Isolation and Precautions for Adults with COVID-19.*

www.https://cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.

> The duration and robustness of immunity to SARS-CoV-2 remains under investigation. Based on what we know from other related human coronaviruses, **people appear to become susceptible to reinfection around 90 days after onset of infection.** To date, reinfection appears to be

>uncommon during the initial 90 days after symptom onset of the preceding infection. (Annex: Quarantine of Person Recovered from Laboratory-diagnosed SARA-COV-2 Infection with Subsequent RE-Exposure). Thus, for persons recovered from SARS-C)C-2 infection, a positive PCR without new symptoms during the 90 days after illness onset more likely represents persistent shedding of viral RNA than reinfection. (Emphasis added).

There has also been a report of COVID-19 re-infection in Michigan's prison population, where like in BOP facilities, adequate protection from the disease is inherently prevented by custodial arrangements. See also, Detroit Free Press, 12/12/20, *State reviewing possible COVID-19 reinfections after 115 prisoners test positive twice*.

New COVID-19 variants that may expose people to re-infection, such as variants from South African, Brazil and England, present additional evidence that Mr. Jones' risk of re-infection will continue and is substantive. *Mutated virus may reinfect people already stricken once with covid-19, sparking debate and concerns*. The Washington Post, 2/5/2021.[3]

---

[3] "But that previous exposure didn't necessarily appear to afford protection. Among those who got saltwater shots, the people with a prior infection got sick at the same rate as study participants who had not been previously infected – a surprise because they would have been expected to have some immunity. Nearly 4 percent of people who had a previous infection were reinfected, an almost identical rate to those with no history of infection."

### C. Case Law Relied On By The Court Does Not Take These Scientific Sources Into Account.

The case law relied on by this Court does not take into account developments in scientific information that has occurred over the last six months of COVID-19 investigation, including the CDC view that individuals may be exposed to re-infection 90 days after an initial infection from which they recover. *Lawrence* and the other cited cases do not provide a basis on which to convert the single medical records note concerning "remission" in Mr. Jones' records into a conclusion that Mr. Jones' risk is too speculative. And, they of course do not take into account the specific opinion by Dr. Vajayan that Mr. Jones in fact "remains at risk for re-infection after March 10, 2021, 90 days from his initial infection."

The question then framed by this science-based information is whether Mr. Jones has protection from re-infection, not whether he "may be re-infected." (ECF 861: Opinion and Order, Pg ID 6639). It is submitted that the answer, according to Dr. Vajayan and the CDC is that he "remains at risk," just as he was before December 2020, and that he will continue to be at essentially the same level of risk without any immunity from re-infection in about three weeks.

Much the same conclusion was reached in *United States v. Coates*, 2020 WL 7640058 at *7, E.D. MI, 12/23/20. ("The court is wary of discounting Coates'

-9-

risk of reinfection given the current spike in COVID-19 cases nationwide and the current severe COVID-19 symptoms that Coates asserts he is experiencing.").

Neither *Lawrence* or *Buford*, cited by this Court (ECF 861: Opinion and Order, Pg ID 6639), require or support a different result. The defendant in *Lawrence*, 2020 WL 5944463, at *2, suffered only from obesity as a medical condition. The court in *Buford,* 2020 WL 4040705 at *5, actually observed that medical science at that date (July 17,2020) had not yet provided a clear answer to the reinfection question. The eight months of research since that date has, however, made a difference. *Lawrence* is also distinguishable because it evaluated the defendant's motion under the limitations of Section 1B1.13 rejected by the Sixth Circuit in *Jones* as not applicable " when an imprisoned person files a motion for compassionate release ..." *Id.* at 1108. See also, *United States v. Hampton*, 2021 WL 164831 at *2, 6th Cir., 1/19/21. To the extent this Court similarly relied on that policy statement in reaching its conclusion (ECF 861, Pg ID 6639)[4], its conclusion must be corrected.

### III. CONCLUSION

---

[4] This Court explained in its Opinion that it "must engage in a three-step inquiry" before granting a compassionate release motion, including that it "must ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id.

Defendant Jones now asks, as he did in his Motion, that this Court grant him compassionate release because his serious medical conditions including ESRD and Type II Diabetes Mellitus expose him to more serious illness and even death if he is to contract COVID-19. He is 65, obese and his life expectancy is less than 5 years, less time than he has remaining on his sentence.

Defendant Jones asks now for this Court to correct its Opinion and Order denying his motion and to grant compassionate release because granting his motion is justified based on science-based opinion that he is and will be exposed to more serious consequences from COVID-19 infection again. He developed acute respiratory failure and pneumonia after contracting the disease in December. There is good reason for concern that his physical ability to fight the disease a second time will not be successful. Compassionate release can remove Mr. Jones from his prison environment where he cannot realistically escape exposure to the disease.

Respectfully submitted,

**GUREWITZ & RABEN, PLC**

By: s/Harold Gurewitz
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grplc.com

Date: February 8, 2021      Attorney Bar Number: P14468

-12-

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

s/Harold Gurewitz (P14468)
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grplc.com
