UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MILTON BUTCH JONES,

    Defendant.

_____/

Case No. 01-80571

HON. MARK A. GOLDSMITH

### ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (Dkt. 886)

The Court denied Defendant Milton Butch Jones's motion for compassionate release. 5/11/22 Op. (Dkt. 885). Jones has now filed a motion for reconsideration of that opinion. Mot. (Dkt. 886).[1] He advances several arguments, none of which warrants reconsideration of the Court's opinion.

Jones contends that the Court made a mistake in weighing the factors listed in 18 U.S.C. § 3553(a) by erroneously "characteriz[ing] Jones's 'offense' as murder." Id. at 4. This is an incorrect description of the Court's opinion. The opinion clearly states that Jones is serving a sentence for continuing criminal enterprise. 5/11/22 Op. at 1. Further, the opinion accurately recounts that Jones directed others to kill, but the opinion does not state that Jones himself committed these murders. Id. at 4–5. In conducting the § 3553(a) analysis, the Court stated that "Jones's crime involved murder," not that his crime was murder. Id. at 9.

---

[1] Because oral argument will not aid the Court's decision, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to the motion, the briefing includes the Government's response (Dkt. 889) and Jones's reply (Dkt. 890).

Jones also argues that the Court relied on deficient and erroneous information in concluding that Jones directed the killings of two men. Mot. at 6. The Court derived the information about the killings from several sources, including Jones's plea agreement and the final presentence report (PSR). See 5/11/22 Op. at 4–5. In his plea agreement, Jones stipulated that his criminal enterprise's activities included killing two men. Plea Agreement. At his plea hearing, Jones also acknowledged that he and his associates "plan[ned] the . . . intentional killings of rival drug traffickers and their associates," including the murders of the two men referenced by this Court. 6/2/11 6th Cir. Op. at. 11 (Dkt. 886-7). The Court's reliance on facts to which Jones admitted is not erroneous.

The PSR likewise describes Jones's involvement in the killing of two men. Jones previously contested the reliability of the PSR, filing numerous objections to the factual assertions contained in it. See 3/31/08 Op. at 2 (Dkt. 886-6). Judge John Corbett O'Meara, the judge to whom this case was previously assigned, determined that "[t]he information supporting the content the defendant deems objectionable is more than adequate to support the Probation Department's factual assertions. . . ." Id. The Court will not permit Jones to impermissibly use a motion for reconsideration as a vehicle to relitigate old arguments. See Rodriques v. Delta Air Lines, Inc., No. 14-CV-12707, 2015 WL 10635525, at *2 (E.D. Mich. May 18, 2015), aff'd sub nom. Rodriques v. Delta Airlines, Inc., 644 F. App'x 629 (6th Cir. 2016).[2]

Additionally, Jones argues that the Court erred in comparing his case to United States v. Dale, No. 92-81127, 2022 WL 163612 (E.D. Mich. Jan. 18, 2022); United States v. Bass, 17 F.4th

---

[2] To the extent that Jones argues that he should not be held responsible for murders committed by his coconspirators, this is an issue that has also already been litigated. See 6/2/11 6th Cir. Op. at. 11 (rejecting Jones's challenge to his plea agreement, stating: "Jones admitted at his plea hearing that he reasonably foresaw that his coconspirators' activities could lead to the homicides").

629 (6th Cir. 2021); and United States v. Araña, 844 F. App'x 834 (6th Cir. 2021). Mot. at 8–9. The Court cited these cases for the proposition that in cases involving murder, the "'seriousness of the offense is the factor under section 3553(a) that carries considerable, if not preemptive, weight[.]'" 5/11/22 Op. at 8 (quoting Dale, 2022 WL 163612, at *7). As discussed above, Jones's crime involved murder. "[C]ases involving murder generally [do] . . . not end[] with the defendant being released." Araña, 844 F. App'x at 836. Jones's real concern appears to be his misunderstanding that the Court, rather than weighing the § 3553(a) factors, adopted a per se rule that the factor concerning the seriousness of the offense is dispositive when the crime involves murder. See Mot. at 12–14. The Court's opinion, however, reveals that it considered and weighed a multitude of factors, including Jones's time served, disciplinary record, age, family support, rehabilitation efforts, severe physical limitations, and risk of recidivism. See 5/11/22 Op. at 8. The fact that the Court afforded heavy weight to the severity of Jones's crime was within its discretion; it does not constitute a mistake of law warranting reconsideration.

Jones also asserts that the Court committed legal error in its analysis of the sentence disparities factor as it relates to the sentence imposed on co-defendant Raymond Canty. Mot. at 14. Jones's argument in his motion for compassionate release was terse and fairly non-specific. It consisted entirely of a one-sentence footnote stating that the sentence disparity consideration should be evaluated by this Court in light of the sentence issued for Canty, as to which the Government had argued Canty's health should be considered.[3] The Court's response to this footnote was a footnote of its own, pointing out that (i) Jones had not contended that Judge

---

[3] Specifically, Jones stated: "The sentence of Co-Defendant Raymond Canty, where the Government intended to include consideration of his Multiple Sclerosis as a reason for a below guideline sentence, should also be considered as a factor under § 3553(a)(6) [] (need to avoid unwarranted disparities)[.]" Def. Supp. Mem. at 18 n.17 (Dkt. 877).

O'Meara had included such a consideration, (ii) Canty was sentenced for less serious crimes, and (iii) § 3553(a)(6) requires a court to consider national disparities, not disparities between co-defendants. In his motion for reconsideration, Jones takes issue with each of these points.

Jones says that this Court was "mistaken to conclude that [co-defendant Raymond] Canty's serious health condition was not a part of Judge O'Meara's consideration in sentencing Canty below his Life guideline. . . ." Mot. at 15. But the Court did not hold that Judge O'Meara did not consider Canty's health in weighing the § 3553(a) factors. Rather, the Court stated that Jones had not alleged that Canty's health was part of Judge O'Meara's considerations. 5/11/22 Op. at 8 n.4. This was unquestionably correct, as Canty's health was alluded to by Jones in his motion as a consideration for which the Government had argued.[4]

Jones also charges that the Court erred in describing Canty's offense conduct as less serious than Jones', when it noted that Canty was convicted of the less serious offenses of drug conspiracy and money laundering. Mot. at 14. Jones notes that, although Canty pled guilty to drug conspiracy and money laundering, he stipulated as part of his guilty plea "that the murder of [Misha Deandre Dorsey] was a reasonably foreseeable result of the drug conspiracy." Id. at 15.

However, sentencing disparities are not unwarranted where the defendant sentenced to a longer term of imprisonment had more serious underlying offense conduct than the comparator's conduct. See 18 U.S.C. § 3553(a)(6) (directing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

---

[4] Moreover, to the extent that Jones is somehow suggesting that this Court failed to consider Jones's health conditions in the § 3553(a) analysis, he is wrong. The Court acknowledged Jones's argument that his "severe physical limitations support the conclusion that he would not endanger the public if released," noted that the Government did "not dispute that Jones's age and physical conditions make his risk of recidivism relatively low," and determined that "Jones's low risk of recidivism weighs in his favor." 5/11/22 Op. at 8.

4

conduct") (emphasis added). The fact that Canty's underlying offense conduct involved one murder does not make his conduct as serious as Jones's conduct. Jones was the mastermind of a criminal enterprise. See Plea Agreement at 3 (stating that Jones "controlled and directed the activities of at least 5 other participants" in the distribution of narcotics). And he was convicted for his ringleader role in that enterprise, which resulted in two murders, committed at his direction and reasonably foreseeable by him. The gravity of Jones's offense and conduct does not deserve the same judicial response that Canty's offenses and conduct prompted.

Jones also says that this Court was mistaken that it did not have authority to consider an alleged disparity with a co-defendant's sentences. Mot. at 16. But the Court never stated that it did not have authority to do so. Rather, after noting the differences in Jones's and Canty's circumstances, it simply quoted established Sixth Circuit law that "§ 3553(a)(6) directs courts to consider 'national disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants.'" 5/11/22 Op. at 8 n.4 (quoting Bass, 17 F.4th at 636). In support of his argument that the Court should have considered sentencing disparities between himself and his co-defendant, Jones cites United States v. Simmons, 501 F.3d 620, 624 (6th Cir. 2007). Simmons, however, reaffirms that § 3553(a)(6) does "not require[]" a district court to consider sentencing disparities between co-defendants, as "§ 3553(a)(6) is there to ensure nationally uniform sentences among like offenders . . . ." 501 F.3d at 624.[5]

---

[5] Jones notes that Canty was released from prison approximately five years ago and his supervised release was terminated approximately three years ago. Mot. at 16. The significance of this for purposes of the motion for reconsideration is not expressed. But to the extent Jones is contending Canty has been treated in a favorable way that should also be applied to Jones, any such argument lacks merit. Canty was placed on supervised release for a period of four years by Judge O'Meara. Canty Am. Judgment (Dkt. 808). However, because Canty complied with the conditions of his supervised release for two years, his probation officer determined that Canty was no longer in need of supervision and recommended an early discharge from supervised release with fewer than two years remaining, which this Court granted. 6/20/19 Report & Order (Dkt. 833). The fact that

Jones, therefore, has failed to establish any error, much less one warranting reconsideration. Jones's motion for reconsideration (Dkt. 886) is denied.

SO ORDERED.

Dated: August 2, 2022                        s/Mark A. Goldsmith
    Detroit, Michigan                     MARK A. GOLDSMITH
                                                     United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2022.

                                                     s/J. McCoy for Karri Sandusky
                                                     Case Manager

---

Canty—who served the majority of his 18-year sentence—was discharged early from supervised release does not bear on whether Jones should be released early from his 30-year prison sentence.